968 F.2d 22
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Gerald H. ZIMMER, Glenda K. Bullard, and Thomas P. Nestor,
Plaintiffs-Appellants,
v.
ROCKWELL INTERNATIONAL CORPORATION, Defendant-Appellee.
 No. 91-5007.
 United States Court of Appeals, Tenth Circuit.
 June 29, 1992.
 
 1
 Before BALDOCK and SETH, Circuit Judges, and BRIMMER, District Judge*.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 The defendant, Rockwell, at its facility known as Rockwell, Tulsa, completed a contract to build a particular bomber. The work force was about 5,000 and this was reduced by layoffs to about 1,500. The plaintiffs were among those laid off. Glenda K. Bullard was a long-time employee as was Thomas P. Nestor. Gerald H. Zimmer had been employed for a comparatively short time. None of the three were collective bargaining employees.
 
 
 4
 The basic issues on appeal of this Oklahoma diversity case arise from the contract causes of action of each plaintiff. These are based on an asserted contractual right that their layoffs be made strictly in accordance with seniority. Plaintiffs Zimmer and Nestor urge that although there was a bilateral employment contract with each of them expressly stating that their employment was "at will," this contract incorporated Company policies and procedures governing layoffs which they asserted were not followed. The express "at will" provision as to plaintiff Bullard is not as clear as it is to the others. This is for the reason that the contract forms used had a box to be checked to make operative an express "at will" condition. Plaintiff Bullard was not checked. The others were.
 
 
 5
 The trial court entered summary judgment for the defendant on the contract claim. It concluded that there was no evidence that seniority was the sole criterion for layoffs as asserted by plaintiffs. Thus there was no contractual right to have layoffs made in accordance with seniority alone. In our view, this determination was correct.
 
 
 6
 The trial court on the summary judgment proceedings held that the plaintiffs were "at will" employees. We have held that Oklahoma applies the "employment at will" doctrine. Carnes v. Parker, 922 F.2d 1506 (10th Cir.).
 
 
 7
 The trial court also held that, in any event, there was no showing that Rockwell did not follow its layoff procedures. This was a holding that if the Company policy and procedures for layoffs were drawn into the bilateral contract they were complied with as to plaintiffs. This covered the situation of plaintiff Bullard if her contract did not express an "at will" condition of employment. The Oklahoma "handbook" cases include Miller v. Independent School Dist. No. 56, 609 P.2d 756 (Okla.).
 
 
 8
 As to these procedures, the record shows that each defendant was ranked within his or her stated group, and the notice and related procedures were followed. This ranking was done by the application of the several stated factors in the policies including seniority. These factors are from the "Personnel Policy" statement and the Standard Operating Manual which the parties urge as the governing policy if appellants get beyond the bare "at will" category.
 
 
 9
 The Standard Operating Manual provides in part:
 
 
 10
 "When a downward adjustment of the work force is required to reduce operational costs, the management and Human Resources administer the adjustment in accordance with the following objectives:
 
 
 11
 "Treat all employees in a nondiscriminatory manner, using each employee's demonstrated capability to contribute substantially to present and foreseeable needs of the organization as the prime criterion for retention.
 
 
 12
 "Recognize the employee's length of service and past contributions to success of the organization.
 
 
 13
 "Improve the organization's competitive posture and ability to capture new business by maintaining the most economically structured and competent organization and by controlling classification mix, work mix, and salary costs.
 
 
 14
 "Build for the future by retaining those employees who can best enhance chances for future business success and who can provide an effective nucleus for growth, thereby enhancing job security and opportunity for all employees.
 
 
 15
 "Other considerations being equal, length of service is the determining factor in making work force adjustments."
 
 
 16
 (Aple.Supp.App. at 32.)
 
 
 17
 The Personnel Policy states as to this matter:
 
 
 18
 "DOWNWARD ADJUSTMENTS
 
 
 19
 "When a downward adjustment of the work force is required, line management and Human Resources will administer the adjustment in accordance with the following objectives:
 
 
 20
 "A. Recognize the employees' length of service and contribution to the success of the organization;
 
 
 21
 "B. Treat all employees in a nondiscriminatory manner, using as prime criterion for retention the extent of the employees' ability to fulfill the organization's present and planned requirements;
 
 
 22
 "C. Improve the organization's competitive posture and ability to capture new business by maintaining the most economically structured and most competent organization and by controlling classification mix, work mix, and salary costs; and
 
 
 23
 "D. Build for the future by retaining those employees who can best enhance future business success and who can provide an effective nucleus for growth.
 
 
 24
 "Human Resources is responsible for administering Company policy affecting downgrade, layoff, and reinstatement."
 
 
 25
 (Aplt.App. at 123.)
 
 
 26
 The operative policy statements demonstrate that seniority was but one of several factors considered. The trial court found, as mentioned, that there was no showing on summary judgment that the applicable procedures were not followed. There was no evidence offered on summary judgment that there was a contract provision for the application of seniority as the sole criterion for the layoffs of plaintiffs. Thus no breach of contract was shown.
 
 
 27
 In the summary judgment proceedings the established sequence of substantial evidentiary submissions was followed. See Certain Underwriters v. Evans, 896 F.2d 1255 (10th Cir.), and Willner v. Budig, 848 F.2d 1032 (10th Cir.).
 
 
 28
 The age discrimination claim of Mr. Zimmer was abandoned on appeal.
 
 
 29
 There was an affidavit of a former long-time personnel section employee (Miles) which stated that the ranking procedures were not always proper. However, the affidavit made no reference whatever to the plaintiffs and thus had no specific reference to their claims. There were only generalizations as to past conditions. The trial court did not consider the affidavit and we agree.
 
 
 30
 There would seem to be no purpose in describing the basic elements in summary judgment doctrine. They are often repeated. See Celotex Corp. v. Catrett, 477 U.S. 317, etc. It is sufficient here to hold that the doctrine was properly applied.
 
 
 31
 The judgment of the trial court is AFFIRMED.
 
 
 
 *
 Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3